IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| MICHAEL J. RIDDLE, | ) | 8:05CV87 |
| | ) | |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM** |
| vs. | ) | **AND ORDER** |
| | ) | |
| WACHOVIA SECURITIES, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the plaintiff's amended motion to vacate an arbitration award that was entered by a National Association of Securities Dealers ("NASD") panel in Omaha, Nebraska, on December 6, 2004. The court previously established a schedule for filing briefs and evidence (see filings 32 and 35), and the matter is now ripe for decision.

The plaintiff has also filed a motion for entry of judgment (filing 36), claiming that the defendant should be deemed to have admitted the allegations of the amended motion to vacate (filing 19) by not having filed a response. This motion is frivolous and will be denied. The Federal Rules of Civil Procedure do not require, and our local rules do not permit,[1] the filing of a response to a motion. The defendant has fully complied with the court's scheduling order.

---

[1] "The party opposing a motion shall not file an 'answer,' or 'opposition,' 'objection,' or 'response' to a motion . . .." NECivR 7.1(b)(1)(A). As detailed in the court's previous memorandum and order (filing 32), the plaintiff erred by filing a complaint to initiate this action. See 9 U.S.C. § 6 and Fed. R. Civ. P. 81(a)(3). Because that pleading was a nullity, the court specifically stated that the defendant was not required to file an answer. (Filing 32, at 4.)

Upon careful consideration of the parties' briefs and the record presented, including review of the transcript of the arbitration hearing, I find that the plaintiff has failed to establish sufficient grounds for vacating the arbitration award under the Federal Arbitration Act, 9 U.S.C. § 10(a).[2] Accordingly, the plaintiff's amended motion will be denied, and the action will be dismissed.

## I. BACKGROUND

On May 19, 2000, the plaintiff, Michael J. Riddle ("Riddle"), was employed as a financial advisor for First Union Securities, Inc. ("First Union"), pursuant to a "profit formula compensation agreement." In simple terms, the agreement provided that Riddle would receive 65 percent of gross revenues generated by him, minus all expenses incurred by First Union on his behalf; if Riddle terminated his employment for any reason, he would remain liable for any deficit under the formula. (Filing 38-1, at 28-36.) Riddle also received a loan of about $500,000, and he signed a promissory note providing that First Union would forgive 1/5 of the original principal sum and accrued interest for each year that Riddle remained employed after the first year;

---

[2] In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C.A. § 10(a) (West Supp. 2005).

however, if Riddle's employment was terminated for any reason before the end of 6 years, the note would become immediately due and payable. (Filing 38-1, at 20-23.)

Wachovia Securities, Inc., merged into First Union on June 15, 2002, and the surviving corporation was later converted into a limited liability company, namely, the defendant, Wachovia Securities, LLC ("Wachovia"). On October 7, 2002, Riddle resigned his employment.

On or about November 5, 2003, Wachovia initiated arbitration against Riddle by filing a statement of claim with the NASD. Wachovia claimed that Riddle owed it more than $400,000 on the promissory note and more than $300,000 under the compensation agreement.

In a letter dated May 28, 2004, Wachovia requested the NASD to bar Riddle from presenting any facts or defenses for failing to respond to the arbitration claim. (Filing 38-1, at 38-39.) The letter recites that attorney David G. Zanardi ("Zanardi"), of Reston, Virginia, entered an appearance on Riddle's behalf on March 17, 2004, more than 3 months after the answer deadline that had been established by the NASD; that a telephonic pre-hearing conference with the 3-member arbitration panel was held on March 22, 2004, during which Zanardi promised to file an answer by April 2, 2004; and that the answer deadline was extended accordingly. (Id.) The panel also established discovery deadlines and ordered that the arbitration hearing would commence on November 30, 2004. (Filing 45-4, at 1-3.)

On November 5, 2004, Zanardi wrote the NASD and requested a 120-day continuance to permit Riddle to obtain new counsel. (Filing 38-2, at 7.) Zanardi stated that he was "retiring from the practice of law for an unknown period of time" and implied that a member of his family was terminally ill. (Id.) Wachovia's counsel responded by letter dated November 11, 2004, and objected to a continuance because an answer still had not been filed by Riddle and because Zanardi's stated reason for requesting the continuance was not believable. (Filing 38-2, at 9-11.) Wachovia's

counsel charged that Zanardi had used a similar ploy in two other arbitration cases brought by Wachovia: In the first case, Zanardi withdrew as the respondent's attorney for unexplained "personal reasons" in late June 2004, resulting in the postponement of an arbitration hearing from July 2004 until April 2005. In the second case, Zanardi moved for a continuance one day before a scheduled hearing in August 2004, and although the continuance was denied, the hearing was cancelled after the respondent agreed to a settlement in principle; the respondent later failed to execute a settlement agreement, however, so it appeared the hearing might need to be rescheduled. (Id.) The panel was urged to "let Mr. Zanardi and his clients know that the 'tactics' of willful non-compliance with deadlines and 'last minute' withdrawals by counsel are completely unacceptable." (Id.)

The arbitration award states that "[o]n November 18, 2004, the panel entered an order denying [Wachovia's] motion to bar and [Riddle's] motion for postponement." (Filing 38-1, at 4.) The order is not in evidence, and the arbitration award does not explain the panel's reasoning in denying the motions. The arbitration award also states that Riddle's answer was filed on November 18, 2004. (Id., at 3.) The answer is in evidence. It is signed by Zanardi, dated August 1, 2004. (Filing 45-3, at 1-5.)

The hearing was held as scheduled, beginning on November 30, 2004, and ending on December 1, 2004. The hearing was conducted by telephone. Two persons testified at the hearing: Riddle, who was still represented by Zanardi, and James Pekelder ("Pekelder"), the branch manager of Wachovia's Omaha office. (Transcript, Filing 33.) Both were called as witnesses by Wachovia; Riddle also testified briefly on direct examination by Zanardi. Exhibits were introduced at the hearing by Wachovia, but they are not contained in the court's record.

The arbitration panel entered its award on December 6, 2004. Without any explanation, the panel found that Riddle was liable to Wachovia for $575,098 in compensatory damages, $109,265 in interest, $9,191 in attorney's fees, and $9,690 in costs. (Filing 38-1, at 5.)

## II. DISCUSSION

The Federal Arbitration Act provides that a district court may set aside the determination of an arbitrator "where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown." 9 U.S.C. § 10(a)(3). Courts will not intervene in an arbitrator's decision not to postpone a hearing if any reasonable basis for it exists. DVC-JPW Investors v. Gershman, 5 F.3d 1172, 1174 (8th Cir. 1993). To constitute misconduct requiring vacation of an award, an error in the arbitrator's determination "must be one that is not simply an error of law, but which so affects the rights of a party that it may be said that he was deprived of a fair hearing." Grahams Serv. Inc. v. Teamsters Local 975, 700 F.2d 420, 422 (8th Cir.1982) (quoting Newark Stereotypers' Union No. 18 v. Newark Morning Ledger Co., 397 F.2d 594, 599 (3d Cir.1968)); see also Tempo Shain Corp. v. Bertek, 120 F.3d 16, 20 (2d Cir.1997) (misconduct must amount to denial of fundamental fairness of arbitration proceeding to justify vacating award). That the arbitrator did not give specific reasons for the denial of a continuance does not evidence misconduct. El Dorado School Dist. No. 15 v. Continental Cas. Co., 247 F.3d 843, 847-48 (8th Cir. 2001) (arbitrator may have determined that postponement was inappropriate because the parties had expended considerable time, effort and money based on the hearing dates, because of the arbitrator's own schedule, or because appellants' counsel had made an insufficient showing that he was unable to attend scheduled hearing; any or all of these explanations would provide a reasonable basis for the decision not to postpone; consequently, district court did not abuse its discretion in ruling that the arbitrator had not been guilty of misconduct in denying a motion for a continuance).

Riddle swears that he had no prior knowledge that Zanardi was withdrawing as his counsel and requesting a continuance of the hearing. (Filing 38-1, at 26-31, ¶ 11.) According to Riddle's affidavit, he received a copy of the November 18th order denying the continuance directly from the NASD because he was no longer represented by counsel. (Id., ¶ 13.) Riddle also states that Zanardi phoned him on November 26, 2004, and indicated that he would be willing to handle the hearing

the following week if Riddle did not yet have substitute counsel. (Id., ¶ 15.) Riddle concluded he "had no other choice." (Id.)

Riddle argues that the arbitration panel should have known from the letter submitted by Wachovia's counsel that Zanardi had neglected the case by not even filing an answer, and that his withdrawal and request for a continuance were merely part of a pattern of neglect. In this regard, Riddle has presented the affidavit of another former Wachovia employee who had retained Zanardi and then found herself to be without representation three weeks before a hearing when Zanardi withdrew. (Filing 38-1, at 11-17, ¶ 5.) The affidavit of an attorney representing two former Zanardi clients who had similar experiences has also been presented. (Id., at 32-39.) Riddle further states in his affidavit that he did not know an answer had not been filed, and that Zanardi did not inform him about Wachovia's motion to bar his presentation of evidence. (Id., at 26-31, ¶¶ 8-10.)

Although Riddle claims that he was unfairly prejudiced by the panel's refusal to grant a continuance, he has not shown that the panel lacked a reasonable basis for its decision. The actual basis for the panel's decision is unknown, but it would not have been unreasonable for the panel to conclude that Zanardi had failed to make a good cause showing for a continuance based on his purported withdrawal—in other words, they may have accepted Wachovia's not unreasonable argument that the withdrawal was simply a delaying tactic. The panel may also have concluded that Wachovia would be unfairly prejudiced by a postponement because the arbitration had already been pending for over a year and Riddle had previously been granted a lengthy extension of time for filing an answer. It is also possible that the panel concluded after receiving the belated answer on November 18, 2004, that Zanardi had decided to continue as Riddle's counsel. As it developed, of course, Zanardi did appear as Riddle's counsel at the hearing, and no objection was made at that time to the hearing going forward. Thus, even if it could be concluded that the arbitrators unreasonably refused to postpone the hearing in order to prevent Riddle from being prejudiced by Zanardi's "last-minute" withdrawal, their refusal did not, in fact,

adversely affect Riddle's position at the hearing—he was still represented by his attorney of choice.

An arbitration award may also be set aside if the arbitrators "refus[ed] to hear evidence pertinent and material to the controversy." 9 U.S.C. 10(a)(3). Riddle argues that he was not allowed to call any witnesses (other than himself) or to present any exhibits at the hearing because Zanardi failed to designate witnesses and exhibits by a November 10, 2004 disclosure deadline that was established by the NASD. He has filed the affidavits of three former Wachovia employees who each state that they had agreed to testify on behalf of Riddle but were not contacted by Zanardi; the substance of their proposed testimony is also stated. (Filing 38-1, at 11-25.)

Even if it may be assumed that the proposed testimony of these witnesses was "pertinent and material to the controversy," and would have corroborated Riddle's own testimony, there is no showing that the arbitration panel refused to hear such testimony or refused to receive any relevant exhibits. Riddle has only shown that he was advised by Zanardi on November 26, 2004, that it was then too late to designate witnesses and exhibits. (Filing 38-1, at 26-31, ¶ 15). Indeed, it has not even been shown that such legal advice was correct. Riddle only cites NASD Rule 10321(c) in his brief and represents that it provides: "The arbitrators <u>may</u> exclude from the arbitration any documents not exchanged or witnesses not identified" at least twenty days prior to the first scheduled hearing date. (Filing 46, at 5) (emphasis supplied). The word "may" generally connotes discretion.[3]

There is no showing that the arbitration panel entered a pre-hearing order excluding any evidence—to the contrary, the record shows that the panel denied Wachovia's motion to bar Riddle from presenting evidence—nor does the transcript

---

[3] The rule also does not apply to documents and witnesses used for cross-examination or rebuttal. See Rule 10321(c) of the NASD Code of Arbitration Procedure (available on the internet at http:/www.nasd.com).

show that the panel excluded any of Riddle's evidence during the hearing. The chairman of the arbitration panel merely reminded Zanardi, "as [he] beg[a]n [his] direct examination of witnesses," to "avoid redundancy" by not going over the same testimony that had been elicited during his cross-examination of Riddle and Pekelder. (Filing 33, at 117.) After asking Riddle a few questions on direct examination, Zanardi stated that he had no other witnesses that he wished to call. (Id., at 133.) Zanardi also offered no exhibits. On this record, it simply is not possible to conclude that the arbitrators were guilty of misconduct.

In essence, Riddle is complaining that Zanardi committed legal malpractice. However, just as a party in a civil suit with privately retained counsel does not have any right to a new trial because of inadequate counsel, see Watson v. Moss, 619 F.2d 775, 776 (8th Cir. 1980), a party in a private arbitration does not have any right to have an adverse award set aside based upon his own attorney's failings. "[A] party who chooses his counsel freely should be bound by his counsel's actions." Deppe v. Tripp, 863 F.2d 1356, 1360 (7th Cir. 1988) (also noting the inequity of forcing the non-erring party to incur the expense of a new trial).

Finally,[4] Riddle claims that "the arbitrators exceeded their powers." See 9 U.S.C. § 10(a)(4). Two arguments are advanced in support of this claim. First, Riddle argues that the promissory note was not subject to arbitration because it contains the following provision: "First Union and Maker hereby expressly intend to except this Note and any dispute arising hereunder from any arbitration requirement arising with respect to the employment relationship between First Union and Maker, and otherwise agree to, and do hereby, waive any right to arbitration of

[4] Although Riddle's amended motion alleges several additional grounds for setting aside the arbitration award (filing 19, ¶ 18), those additional grounds are not discussed in Riddle's brief and thus are deemed abandoned. See NECivR 39.2(c) ("[T]he judge may treat a party's failure to submit a brief [pursuant to a briefing schedule] or to discuss an issue in the brief submitted as an abandonment of that party's position on any issue not briefed or discussed.").

any dispute or matter concerning this Note." (Filing 38-2, at 21.) Second, Riddle argues that he never consented to the arbitration, and he specifically notes that although the NASD's scheduling order (filing 45-4, at 3) required a submission agreement to be filed by April 2, 2004, along with Riddle's answer, this was not done. The omission was noted by the chairman of the arbitration panel at the beginning of the hearing, and Zanardi, after indicating that the agreement should have been on file, promised to fax a copy to the NASD immediately. (Filing 33, at 10.) The fax does not appear to have been sent, however, as the arbitration award states that "Riddle did not file with the NASD Dispute Resolution a properly executed submission to arbitration . . .." (Filing 38-1, at 4.) Despite the lack of a submission agreement, the arbitration panel specifically found that Riddle "is required to submit to arbitration pursuant to Rule 10301 (sic)[5] of the NASD Code of Arbitration Procedure (the "Code") and having answered the claim, appeared and testified at the hearing is bound by the determination of the arbitration panel on all issues submitted." ( Id.)

The Eighth Circuit has distinguished three types of challenges to arbitrators' authority to resolve disputes: jurisdictional challenges of a procedural nature, jurisdictional challenges of a substantive nature, and challenges that relate to the merits of the arbitrators' decision. See Int'l Bhd. of Elec. Workers ("IBEW"), Local 545 v. Hope Elec. Corp., 380 F.3d 1084, 1098 (8th Cir. 2004). In general, jurisdictional challenges of a substantive nature are considered appropriate for judicial resolution, whereas jurisdictional challenges of a procedural nature are to be

[5] Rule 10301 pertains to disputes between NASD members and their customers. The arbitrators presumably meant to refer to Rule 10201, which pertains to disputes between or among NASD members and their employees (or other "associated persons"). For arbitrable disputes "that arise out of the employment or termination of associated person, and that relate exclusively to disputes involving employment contracts, promissory notes or receipt of commissions" where the claim exceeds $50,000, an panel composed of "three non-public arbitrators" is appointed unless the parties agree to a different panel composition. See Rule 10202(b)(1)(B) of the NASD Code of Arbitration Procedure (available on the internet at http:/www.nasd.com).

determined by the arbitrators. See id. (citing Int'l Ass'n of Bridge, Structural, Ornamental, and Reinforcing Ironworkers, Shopman's Local 493 v. EFCO Corp. and Constr. Prods., Inc., 359 F.3d 954, 956 (8th Cir. 2004)). Judicial review of merit-based challenges is highly deferential. See id., 380 F.3d at 1100.

Jurisdictional challenges of a procedural nature relate to whether the party who seeks arbitration, and the arbitrators themselves, abided by the procedural safeguards set forth in the arbitration agreement and in the rules of the arbitral body. See id., 380 F.3d at 1098. Procedural arbitrability issues to be resolved by the arbitrators include questions concerning a party's adherence to applicable procedural prerequisites and "allegation[s] of waiver, delay, or a like defense to arbitrability." See Shopman's Local 493, 359 F.3d at 955-56 (quoting Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 25 (1983). Jurisdictional challenges of a substantive nature, on the other hand, are generally for the courts to resolve and relate to "two gateway questions of 'arbitrability,'" namely, the underlying issues of contract interpretation necessary to determine whether the parties are subject to a valid contract that calls for arbitration, and whether the contract, in fact, authorizes the arbitrators to decide the substantive issue submitted for resolution. See IBEW, Local 545, 380 F.3d at 1098 (quoting Shopman's Local 493, 359 F.3d at 956). Substantive jurisdictional challenges are to be decided by the arbitrators, however, where the parties have unambiguously granted such authority. See id., 380 F.3d at 1099.

In this case, the profit formula compensation agreement does not contain an arbitration clause, and it appears from the claim statement filed with the NASD that Wachovia initiated the arbitration pursuant to Rule 10201 of the NASD Code of Arbitration Procedure, based solely upon its alleged status as a NASD member and Riddle's alleged former status as a registered representative of Wachovia. (Filing 38-2, at 12-18, ¶¶ 2-4) These allegations were not denied by Riddle in his answer.

The NASD Code of Arbitration Procedure is not in evidence, but the Eighth Circuit has previously held that former Section 35 of the Code (now codified as Rule

10324), is a "clear and unmistakable" expression of intent to leave all question of arbitrability to the arbitrators, including interpretation of all provisions of the NASD Code. See FSC Securities Corp. v. Freel, 14 F.3d 1310, 1312-13 (8th Cir. 1994) (even if time limitation in NASD Code was a substantive limitation on arbitrability, arbitration panel's interpretation was entitled to substantial deference). While Freel dealt with a permissive arbitration between a NASD member and investors, where both sides executed uniform submission agreements providing that the NASD Code would govern their dispute, the Court of Appeals' holding should apply equally to a mandatory arbitration initiated by a NASD member against a former employee pursuant to Rule 10201, as happened in this case.

Both parties assume that they were free to contract out of certain arbitration requirements imposed by the NASD Code. I question this assumption, but need not decide the issue except to say that there is no evidence the parties contracted to limit the arbitration panel's authority to decide whether the issues submitted to it for arbitration under Rule 10201 were, in fact, arbitrable.[6] Thus, Riddle was required to present his argument for excepting the promissory note from arbitration to the panel for decision. He did not. The answer does not allude to the note's language or raise any jurisdictional challenge, nor was any objection made at the hearing. I therefore find that the panel did not exceed its authority in deciding the merits of Wachovia's claim on the promissory note. Cf. IBEW, Local 545, 380 F.3d at 1103 (substantive jurisdictional challenge appropriate for decision by a court held not waived by the challenger's failure to appear in the arbitration, but "[i]n a situation where the parties' . . . agreement clearly apportions to the arbitrators not only the authority to resolve the merits of a grievance, but also the power to resolve underlying issues of arbitrability, there is not a similar rationale to excuse a party's failure to first offer the arbitrators themselves an opportunity to address the issue of arbitrability.").

---

[6] If the parties to a permissive arbitration agreement wish to give arbitrators less discretion than that accorded by Rule 10324, they are free to do so. See Freel, 14 F.3d at 1313.

Alternatively, I find that Riddle conferred complete jurisdiction upon the arbitration panel when he answered Wachovia's claims on the merits and appeared at the hearing without objecting to the arbitrability of the promissory note. Cf. id. (cautioning that "it remains risky and ill-advised to fail to register an objection to arbitration at every possible step," and stating that "[a]n appearance before an arbitration panel for the limited purpose of contesting jurisdiction or to participate on the merits while preserving an objection to jurisdiction does not confer jurisdiction."). In other words, even if this substantive jurisdictional challenge to the arbitration award properly should be treated as an issue for the court to decide, Riddle waived his right to judicial review by participating in the arbitration without reservation.

The second issue of arbitrability, that is, whether Riddle was required to file a submission agreement in order to be bound by the arbitration award, is procedural in nature, at least in a case such as this where mandatory arbitration was initiated under Rule 10201 of the NASD Code. Consequently, the court must defer to the arbitration panel's decision that Riddle's failure to file a submission agreement with the NASD did not render the arbitration non-binding.

## III. CONCLUSION

Riddle has failed to establish that the arbitration award should be vacated. In particular, he has not shown that the arbitrators' refusal to postpone the hearing was misconduct, that the arbitrators refused to consider any relevant evidence, or that the arbitrators exceeded their authority in any respect.

IT IS ORDERED that:

1. Plaintiff's motion for entry of judgment (filing 36) is denied.

2. Plaintiff's amended motion to vacate arbitration award (filing 19) is denied.

3. Judgment shall be entered by separate document, providing that the action is dismissed with prejudice.

December 12, 2005.

BY THE COURT:

s/ *Richard G. Kopf*
United States District Judge